UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NURBU LAMA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NEW CENTURY FOUNDATION, et al.,<br><br>    Defendants. | Case No. 19-cv-07218-JSC<br><br>**ORDER TO PLAINTIFFS TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41** |

Plaintiffs Nurbu Lama, Namygyal Dhondup and Zambala Inc. initiated this action in the Southern District of New York in March 2019. (Dkt. No. 1.) Lama and Dhondup allege they have been persecuted by defendant New Century Foundation. (*Id.* at 19.) Zambala is a Taiwanese company that "trades in commodities that serve the needs of the spiritual communities and public at large." (*Id.*) Plaintiffs name a variety of defendants, including the New Century Foundation, various lawyers, Facebook and Go Daddy. The Southern District of New York described the factual allegations of the complaint as follows:

> Plaintiff Nurbu describes himself as a Tibetan Buddhist guru or "lama." (Affidavit of Lama Nurbu, sworn to Feb. 9, 2019 ("Nurbu Aff.") (Dkt. 1), at 54.) At some point, Nurbu moved to California from India, where he had previously lived and taught at a monastery. (*See* Compl., at 19, 24.) After he relocated to this country, the first defendant with whom Nurbu came into contact was Chen, who "held herself out as a lawyer" at a time when Nurbu needed legal assistance related to his immigration status. (*Id.*, at 24.) Chen introduced Nurbu to defendant Miao, who Nurbu alleges is the leader and founder of the defendant organization NCF. (*Id.,* at 4, 20.) The Complaint essentially alleges that NCF is a criminal enterprise and that defendants Wang, Hong, and Chen, in addition to Miao, are all among its officers, employees, or associates. (*See id*., at 20-21.) Additionally, Plaintiffs allege that the Attorney Defendants acted on behalf of, or for the benefit of, the NCF Defendants to "further the conspiracy" in which the NCF Defendants were engaged. (*See id*., at 21-22.)

> The alleged nature of this conspiracy is multifaceted. Plaintiffs allege that Nurbu was misled into joining NCF, thinking that it was a legitimate spiritual organization (*id.*, at 24; *see also id.*, at 23 (stating that Nurbu initially joined NCF "in the belief that [its] leader[, Miao,] was a Divine incarnation as she claimed")), but was then detained by the organization as a virtual prisoner for an unspecified period (*see id.,* at 24; Nurbu Aff., at 58, 60), sexually assaulted by Miao on one or more occasions (*see* Nurbu Aff., at 57), and forced to teach workshops on behalf of NCF without fair compensation (*see id.*, at 59; see also id., at 64 (stating that $185 of Nurbu's meager $300 monthly stipend was paid to NCF in rent)). Plaintiffs claim that Nurbu did not have freedom of movement during this period, stating that "[h]e [was] driven and taken to each of the teachings and workshops by the [NCF] Defendants" (Compl., at 25), that the NCF Defendants took possession of his passport when he was first inducted into their organization (*id.*, at 24), and that he was not "permitted to leave the organization" and was instead "bound in lifelong servitude" (*id.*, at 27). Plaintiffs also allege that the individual NCF Defendants exploited Nurbu's status as a respected religious figure by publishing books and CDs in his name for their own profit. (*Id.*, at 25-26.)
>
> After Nurbu had allegedly escaped the NCF Defendants' imprisonment in October 2011 (*see* Nurbu Aff., at 65), Plaintiffs claim that the NCF Defendants sought to punish him (*see* Compl., at 27) by filing two sexual-assault lawsuits against him in 2013 and 2015, one or both of which appear to have been decided adversely to Nurbu (*see* Nurbu Aff., at 66, 71; *see also id.*, at 73 (describing Nurbu's uncertainty about the status of the 2015 case)). The NCF Defendants also allegedly engaged in a defamatory media campaign, using the digital platforms hosted by defendants GoDaddy and Facebook, in an effort to destroy Nurbu's image "globally [and] especially in China." (Nurbu Aff., at 69; Compl., at 22). The allegations with respect to plaintiffs Dhonup and Zambala are sparse and somewhat difficult to decipher. Broadly, Plaintiffs allege that Dhonup ran the company Zambala, which sold books and possibly other items at stores in the United States. (Affidavit of Namygyal Dhonup, sworn to Feb. 9, 2019 ("Dhonup Aff.") (Dkt. 1), at 83.) Dhonup met Miao briefly in 2008 (*id.*), but no other interactions between the two are alleged until 2013, when Miao and unspecified associates engaged in a campaign to sully Dhonup's image and ultimately force Zambala into bankruptcy (*id.*, at 84-85).

(Dkt. No. 52 at 3-5.)

By order filed August 14, 2019, the Southern District of New York ordered Plaintiffs to address several issues ("the August 14, 2019 Order"). First, unrepresented plaintiff Namygyal Dhondup had not provided the court with his contact information. Second, unrepresented corporate plaintiff Zambala Inc. could not prosecute the action unless an attorney enters an

2

appearance on Zambala's behalf. Third, an attorney by the name of Kiran Meettook was making unauthorized submissions on behalf of the plaintiffs even though he had not made an appearance on their behalf. (Dkt. No. 45.) The court directed the plaintiffs to address these issues if they wished to proceed with the action. The same day attorney Meettook purported to file an interlocutory appeal of the court's order. (Dkt. No. 46.)

A magistrate judge for the Southern District of New York subsequently issued a Report and Recommendation that the action be transferred to this District on the grounds that venue is not proper in the Southern District of New York (Dkt. No. 52), which was adopted by the assigned district court judge and the case transferred. (Dkt. Nos. 54, 55.)

Since the transfer, the plaintiffs have not cured any of the defects noted in the August 14, 2019 Order. Specifically, unrepresented plaintiff Namygyal Dhondup has not provided the federal court with any contact information and no attorney has made an appearance on Dhondup's behalf. No attorney has made an appearance on corporate plaintiff Zambala's behalf. And attorney Meettook has not made an appearance on any plaintiffs behalf; indeed, attorney Meettook cannot do so without first being admitted pro hac vice. *See* N.D. Cal. Civ. L.R. 11; *see also In re Bundy*, 840 F.3d 1034, 1041–42 (9th Cir. 2016) ("Importantly, '[t]here is no right of federal origin that permits [out-of-state] lawyers to appear in state courts without meeting that State's bar admission requirements.'" (quoting *Leis v. Flynt*, 439 U.S. 438, 443 (1979) (per curiam)), subsequent mandamus proceeding, 852 F.3d 945 (9th Cir. 2017)). Meettook's repeated unilateral efforts to be added as a party plaintiff are not sufficient to give attorney Meettook the right to appear in this action (Dkt. Nos. 48, 49, 50, 51), as only the current plaintiffs can amend the complaint and then only in accordance with Federal Rule of Civil Procedure 15.

Finally, no plaintiff appeared for the initial case management conference scheduled for January 30, 2020, even though unrepresented defendant Chen personally appeared. (Dkt. No. 60) Instead, on January 30, 2020, attorney Meettook filed an incomprehensible submission entitled "Matter Subject to Federal Jurisdiction Before the Supreme Court of New York 1905/2020/Affidavit of Counsel Meettook." (Dkt. No. 58.)

Accordingly, Plaintiffs are ordered to show cause why this action should not be dismissed

pursuant to Federal Rule of Civil Procedure 41 for a failure to prosecute. In particular, Plaintiffs shall file a written submission on or before February 18, 2020 that explains why the action should not be dismissed for their failure to correct the deficiencies noted by the Southern District of New York court in the August 19, 2020 order and their failure to appear at the January 30, 2020 initial case management conference in this Court. Plaintiffs are warned that their failure to comply with this Order and/or to adequately explain their conduct in this action may lead this Court to issue a Report and Recommendation that the action be dismissed with prejudice for a failure to prosecute. *See* Fed. R. Civ. P. 41.

Attorney Meettook is ordered not to file any more submissions in this action (except for a compliant application to appear pro hac vice) unless and until admitted to appear in this District pro hac vice. *See* N.D. Cal. L.R. 11.

No defendant needs to appear or make any filings in this case until further order of the Court.

**IT IS SO ORDERED.**

Dated: February 3, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

4